Mario Iskander, SBN #327025
JUSTICE LAW GROUP
1111 N. Brand Blvd Suite 308
Glendale CA 91202
Tel. (240) 439-1970
Email mario@iskanderlaw.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **MOHAMMAD GHAFARINIA** a/k/a **MATT NIA**; **ARSALAN GHANBARI**; **NIMA ASADI**; and **BETTER COMPANIES LLC,**<br><br>Plaintiffs,<br>v.<br><br>**BRIAN F. McBRIDE** and **DEBORAH BLISSICK,**<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF**<br><br>**1) 42 U.S.C. § 1981 (Intentional ace/Ancestry Discrimination);**<br>**2) 42 U.S.C. § 1985**<br>**3) (Conspiracy to Deprive of Equal Rights)**<br><br>**DEMAND FOR JURY TRIAL** |

## I. INTRODUCTION

1. This action arises from Defendants' deliberate effort to use the power of federal and state government as a weapon against business owners of Persian/Iranian ancestry. After demanding money from Plaintiffs in connection with an alleged consumer telephone dispute, Defendants threatened that unless they obtained "restitution," they would seek criminal prosecution, immigration investigations, asset freezes, professional discipline, and ultimately Plaintiffs' removal from the United States. They then carried out those threats by submitting knowingly false reports to ICE, DHS, USCIS, the FBI, the Irvine Police Department, a Member of Congress, and the State Bar of California.

2. Defendants did not merely accuse Plaintiffs of violating the Telephone Consumer Protection Act. They repeatedly identified Plaintiffs as "immigrants," questioned whether they lawfully entered the United States, urged federal authorities to investigate their citizenship and immigration history, suggested terrorist associations, and demanded that Plaintiffs "be removed in any lawful manner possible." They later demanded money while threatening to continue those reports and to do "whatever it takes" to obtain restitution. Defendants' campaign was directed not only at Plaintiffs themselves but also at Plaintiffs' contractual relationships with their general counsel and outside counsel, whom Defendants sought to disqualify, intimidate, accuse of criminal conduct, and, in the case of outside counsel, "denaturalize and send back to Ukraine."

3. Defendants knew these accusations were false. Months before any allegedly offending telephone calls, Defendant Blissick voluntarily submitted an online loan application requesting financing from Plaintiffs' affiliated lending company and expressly authorized follow-up communications. Independent third-party lead-verification records contemporaneously documented that solicitation. Despite possessing this knowledge, Defendants falsely portrayed Plaintiffs as criminals and "scammers" while attempting to leverage immigration enforcement and criminal prosecution into monetary gain.

4. This action seeks relief under 42 U.S.C. §§1981 and 1985(3) because Defendants intentionally targeted Plaintiffs because of their Persian/Iranian ancestry, conspired to interfere with Plaintiffs' contractual and business relationships, and attempted to use governmental power to deprive Plaintiffs of equal rights guaranteed by federal law.

## II. JURISDICTION AND VENUE

**5.** This Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because Plaintiffs assert claims arising under the laws of the United States, namely 42 U.S.C. §§ 1981 and 1985(3).

**6.** This Court has personal jurisdiction over Defendant McBride. Although McBride resides in New Jersey, he committed intentional acts expressly aimed at California and knew the harm would be suffered in California. He directed accusatory communications into this State — including to the Chief of Police of the City of Irvine, California, and to the State Bar of California

— and targeted Plaintiffs Ghafarinia, Ghanbari, and Asadi, whom he knew to be residents of California, for the purpose of causing them harm here. McBride's own suit-related conduct thus created a substantial connection with California. *See Calder v. Jones*, 465 U.S. 783 (1984); *Walden v. Fiore*, 571 U.S. 277 (2014); *Briskin v. Shopify, Inc.*, 135 F.4th 739 (9th Cir. 2025) (en banc).

**7.** This Court has personal jurisdiction over Defendant Blissick, who participated in, encouraged, directed, and ratified the California-directed course of conduct described herein, and who committed and directed acts she knew would cause harm to the California Plaintiffs in California, acting in concert with McBride as alleged below. Among other things, Blissick personally directed her April 22, 2025 loan solicitation to an Irvine, California business, and her claimed victimization supplied the factual premise of the reports Defendants directed into this State.

**8.** Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims — including Defendants' communications directed into this District and the injuries suffered by the California Plaintiffs — occurred in this District.

## III. PARTIES

**9.** Plaintiff **Mohammad Ghafarinia**, also known as **Matt Nia**, is an individual of Persian/Iranian ancestry residing in Newport Beach, California, and a co-owner of the Better group of companies.

**10.** Plaintiff **Arsalan Ghanbari** is an individual of Persian/Iranian ancestry residing in Newport Beach, California, and a co-owner of the Better group of companies.

**11.** Plaintiff **Nima Asadi** is an individual of Persian/Iranian ancestry residing in Irvine, California, and is a licensed California attorney who serves as general counsel to the Better group of companies.

**12.** Plaintiff Better Companies LLC is a California limited liability company with its principal place of business at 2525 Main Street, Irvine, California. Better Companies is owned by Plaintiffs Ghafarinia and Ghanbari, individuals of Persian/Iranian ancestry, and has acquired an imputed racial identity for purposes of 42 U.S.C. § 1981: Defendants targeted the company because of its owners' ancestry. See Thinket Ink Information Resources, Inc. v. Sun Microsystems,

Inc., 368 F.3d 1053 (9th Cir. 2004). Better Rise Capital LLC — the entity through whose website Blissick submitted her April 22, 2025 loan inquiry, and the lead defendant in Blissick's D.N.J. action — is a subsidiary of Better Companies and is likewise owned by Plaintiffs Ghafarinia and Ghanbari.

**13.** Defendant **Brian F. McBride** is an individual residing at 15 Seagarden Drive, Linwood, New Jersey 08221.

**14.** Defendant **Deborah Blissick** is an individual residing at 15 Seagarden Drive, Linwood, New Jersey 08221. Blissick is married to Defendant McBride and is the plaintiff in the related action *Blissick v. Better Rise Capital LLC, et al.*, No. 1:26-cv-02258-KMW-EAP (D.N.J.).

## IV. FACTUAL ALLEGATIONS

### A. The Parties and the Separate Course of Conduct

**15.** Plaintiffs Ghafarinia, Ghanbari, and Asadi are of Persian/Iranian ancestry. Plaintiffs are informed and believe that McBride became aware of their ancestry and presumed, based on their names and ancestry, that their right to be in the United States was suspect.

**16.** The conduct giving rise to this action is separate from, and independent of, any dispute concerning telephone calls. Beginning on or about February 6, 2026, McBride undertook a deliberate course of conduct directed at Plaintiffs' ancestry and perceived immigration status.

### B. Blissick's Solicitation and the False Premise of Defendants' Reports

**17.** On or about April 22, 2025, Blissick personally submitted an online loan inquiry through betterrisecapital.com, the website of Better Rise Capital LLC, a subsidiary of Plaintiff Better Companies LLC, from an IP address geolocated to Linwood, New Jersey. She requested a $65,000 business-expansion loan for "Cup of Bliss Coffee Roasters, LLC," supplied her telephone number (ending 5574) and her email address, and authorized contact regarding financing options. The submission was captured contemporaneously by a neutral third-party lead-verification service, Verisk/Jornaya ("TCPA Guardian"), under Universal LeadiD B5B802E7-0833-10C4-6433-14251DD683E6.

**18.** The telephone calls Defendants later reported to law enforcement as criminal "scam" activity were responses to Blissick's own solicitation. A second Verisk/Jornaya certificate

documents a further lead event on December 5, 2025 (Universal LeadiD 2E92A0EA-E963-430B-E8BA-A032A56E7ECC), originating from IP address 73.194.101.237, geolocated to Linwood, New Jersey — the town where Defendants reside — with an express written consent disclosure captured at the event.

**19.** Notwithstanding these records, Blissick's operative pleading in Blissick v. Better Rise Capital LLC, et al., No. 1:26-cv-02258-KMW-EAP (D.N.J.), alleges that she "did not provide Defendants with her prior express consent to be contacted," that she had no "pre-existing business relationship with Defendants, and was not interested in borrowing money," and that she used the telephone line for "residential purposes." Blissick knew those allegations were false when made, because she had personally submitted the April 22, 2025 loan solicitation. After McBride's own claims were withdrawn to arbitration, Blissick remained the sole named plaintiff prosecuting that false factual premise.

**C. The Immigration-Targeted Communications**

**20.** McBride directed a communication to a Member of Congress (Representative Van Drew) and his staff, captioned as concerning "harassment by immigrants." In it, he named Messrs. Ghafarinia and Ghanbari as "the same two men" who own the companies and singled out Mr. Ghanbari with the assertion that he "identifies as having immigrated to the United States after birth."

**21.** McBride asked the Department of Homeland Security and ICE to investigate whether Plaintiffs "were dishonest on their applications to immigrate to the United States," and wrote that "these two men need to atone for their violation of our laws or be removed in any lawful manner possible."

**22.** McBride told the Chief of Police of the City of Irvine, California, that he "had to report these fellows to ICE."

**23.** McBride's February 6, 2026 report to the Irvine Chief of Police asserted that "my wife and I have been inundated with scam calls coming from a resident of Irvine, CA." It identified Plaintiff Ghafarinia by name and home address and offered to come to Irvine "to press criminal

charges." On June 23, 2026, McBride renewed the contact, seeking police records and body-worn-camera footage to use against Plaintiffs.

**24.** McBride lodged a complaint with the State Bar of California against Plaintiff Asadi.

**25.** On or about June 25, 2026, McBride submitted a tip-form report to U.S. Citizenship and Immigration Services and a complaint to the FBI's Internet Crime Complaint Center accusing Plaintiffs and their counsel of fabricating the consent evidence — asserting that "the IP address is not a match" and that the lead record was "manufactured" — accusations refuted by the neutral third-party Verisk/Jornaya records described above. By McBride's own account in that submission, his federal TCPA claim had by then been dismissed without prejudice.

**26.** In a June 25, 2026 letter to Representative Van Drew, McBride extended the campaign to Plaintiffs' outside counsel, a naturalized United States citizen, writing that the attorney "should be denaturalized and sent back to Ukraine." Defendants' communications target Plaintiffs and their counsel based on perceived nationality, immigration status, ancestry, ethnic characteristics, and names.

**D. The Demand for Money**

**27.** McBride tied these threats to a demand for money, stating that he would use "freezing financial assets, pursuing criminal charges, and request ICE to investigate their immigration history," and that he would do "whatever it takes to get the calls to stop and receive restitution."

**28.** McBride has continued to press the demand. As recently as June 24, 2026, he renewed it in writing, characterizing it as a "legitimate request for restitution" and closing: "Should your clients be desiring a global resolution, please state the same and I will authorize counsel to make a global settlement."

**E. Defendants' Concerted Conduct Directed at Plaintiffs**

**29.** Defendants' conspiracy did not arise spontaneously. Blissick supplied the knowingly false factual premise—that she had received unsolicited calls despite her own written loan inquiry—while McBride undertook the campaign of reporting Plaintiffs to governmental authorities and demanding money. Each Defendant performed complementary roles in furtherance

of their common objective. McBride's reports rested on Blissick's telephone line and her claimed victimization, and he framed them jointly from the outset ("my wife and I have been inundated with scam calls"). Blissick personally initiated the underlying contact through her April 22, 2025 loan solicitation, knew that the responsive calls were not unsolicited "scam" activity, and nonetheless filed and continues to prosecute a federal action premised on the contrary assertion. Plaintiffs are informed and believe, and on that basis allege, that McBride and Blissick, who are married and who jointly pursued their grievances against Plaintiffs, agreed and acted in concert to carry out the course of conduct described above, and that Blissick participated in, encouraged, directed, and ratified that conduct, sharing McBride's objective and his animus against Plaintiffs' Persian/Iranian ancestry and perceived immigration status.

**30.** The coordinated nature of Defendants' conduct — including its timing in relation to the parties' litigation, their shared knowledge and objectives, and their joint pursuit of relief against Plaintiffs — reflects a common agreement between them.

**31.** Defendants directed their conduct at Plaintiffs personally, including by communicating their accusations and demands to and about Plaintiffs, demanding that Plaintiffs' counsel withdraw, and characterizing Plaintiffs' lawful representation as "terroristic," in a continued effort to intimidate Plaintiffs and to obtain leverage. Defendants' conduct is continuing and threatens future harm absent injunctive relief.

**32.** Defendants' campaign has been aimed in substantial part at Plaintiffs' attorney-client relationships. McBride filed the State Bar complaint against Asadi — whose contract with Better Companies is to serve as its general counsel — announced it in writing while threatening further complaints, and accused Asadi and Plaintiffs' outside counsel of felony fabrication of evidence in his submissions to USCIS and the FBI. Defendants demanded that Plaintiffs' counsel withdraw, characterized Plaintiffs' lawful representation as "terroristic," and urged that Plaintiffs' outside counsel be "denaturalized and sent back to Ukraine." The object and effect of this conduct was to impair and sever the contractual engagements between Plaintiffs and their counsel, and to impair Asadi's ability to perform his own contract as general counsel.

**33.** Defendants' reports and complaints to the Irvine Police Department, USCIS, the FBI, and the State Bar of California were not genuine efforts to obtain governmental redress. Each rested on an intentional misrepresentation of material fact — that Defendants were strangers "inundated" with unsolicited criminal "scam" calls — that was objectively false; Defendants knew it was false, because Blissick had personally solicited the contact on April 22, 2025 and the neutral third-party consent records documented that solicitation; and the misrepresentation deprived each resulting proceeding of its legitimacy. McBride's contemporaneous written demands for money confirm that the reports were instruments of a campaign to extract payment and to injure Plaintiffs, not petitions made in good faith.

**34.** For the same reasons, Blissick's prosecution of her consent-based claims in the D.N.J. action is objectively baseless — no reasonable litigant could reasonably expect to prevail on an assertion of non-consent that is contradicted by her own contemporaneously documented solicitation — and is maintained in subjective bad faith, as leverage in furtherance of Defendants' scheme. Likewise, McBride's monetary demands were not made in a good-faith effort to resolve a genuine claim; they sought money to which Defendants knew they had no lawful claim, premised on accusations Defendants knew to be false.

**35.** At all relevant times, each Defendant acted in concert with, and as the agent and co-conspirator of, the other. Each Defendant authorized, ratified, participated in, and is jointly and severally liable for the acts of the other taken in furtherance of their common plan.

**F. Harm to Plaintiffs**

**36.** As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered and continue to suffer injury. The individual Plaintiffs have suffered severe emotional distress, fear for their security and liberty, and reputational harm. Plaintiff Better Companies has suffered business disruption, economic loss, including the diversion of employee and counsel time to responding to Defendants' false reports. Plaintiffs have further suffered loss of goodwill, loss of business reputation, impairment of lender relationships, diversion of executive time, loss of employee productivity, expenses responding to investigations and future reputational harm. All

Plaintiffs have suffered interference with their business, professional, and attorney-client relationships, and economic loss, in amounts to be proven at trial.

**FIRST CAUSE OF ACTION**

***Violation of 42 U.S.C. § 1981***

***All Plaintiffs against Defendants***

**37.** Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

**38.** Section 1981 guarantees to all persons the same right to make and enforce contracts as is enjoyed by white citizens, free from intentional discrimination on the basis of race, ancestry, or ethnic characteristics. *Saint Francis College v. Al-Khazraji*, 481 U.S. 604 (1987). Persons of Persian/Iranian ancestry are a protected class under § 1981. *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751 (7th Cir. 2006); *Nia v. Bank of America, N.A.*, 725 F. Supp. 3d 1150 (S.D. Cal. 2024).

**39.** Plaintiffs are of Persian/Iranian ancestry, and Defendants intentionally discriminated against them because of that ancestry and their ethnic characteristics — not merely because of their place or nation of origin.

**40.** Defendants' conduct interfered with Plaintiffs' ability to make, enforce, perform, and enjoy the benefits, privileges, terms, and conditions of specific contractual relationships. Defendants' State Bar complaint and felony accusations against Asadi were calculated to impair, and have burdened and impaired, Asadi's performance and enjoyment of his contractual engagement as general counsel to Better Companies. Defendants' demands that Plaintiffs' counsel withdraw, their characterization of the representation as "terroristic," their accusations that counsel fabricated evidence, and their call for counsel's denaturalization were calculated to sever, and have burdened and impaired, the attorney-client engagement contracts between each Plaintiff and their counsel, including by forcing Plaintiffs and their counsel to divert substantial time and resources from the representation to responding to Defendants' false reports.

41. Defendants further sought to interfere with Plaintiffs' existing and prospective contractual relationships with banks, lenders, customers, vendors, investors, and other business

partners by attempting to have Plaintiffs investigated for criminal conduct, subjected to immigration enforcement, deprived of the ability to lawfully remain in the United States, and have their financial assets frozen. Defendants knew that such accusations, if credited, would foreseeably impair Plaintiffs' ability to obtain financing, enter into contracts, maintain customer relationships, and continue operating their lending business on equal terms with others.

42. Defendants' objective was not merely to obtain money from Plaintiffs, but to impair Plaintiffs' ability to continue conducting business by causing governmental investigations that would damage their reputation, frighten customers and lending partners, disrupt existing contractual relationships, and discourage prospective customers from entering contracts with Plaintiffs. Defendants did not merely request governmental investigation of alleged legal violations. Rather, they invoked Plaintiffs' ancestry, ethnicity, immigrant status, and citizenship as the basis for governmental intervention.

**43.** As a result, Plaintiffs have suffered damages in amounts to be proven at trial and are entitled to compensatory and punitive damages, injunctive relief, and attorney’s fees under 42 U.S.C. § 1988.

**SECOND CAUSE OF ACTION**

***Conspiracy to Deprive of Equal Rights, 42 U.S.C. § 1985(3)***

***All Plaintiffs against Defendants***

**44.** Plaintiffs reallege and incorporate by reference each of the foregoing paragraphs as though fully set forth herein.

**45.** Section 1985(3) prohibits two or more persons from conspiring, with class-based, invidiously discriminatory animus, to deprive any person of the equal protection of the laws or of equal privileges and immunities. *Griffin v. Breckenridge*, 403 U.S. 88 (1971).

**46.** Defendants McBride and Blissick are two separate persons who agreed and conspired with one another, with invidiously discriminatory animus against Plaintiffs because of their Persian/Iranian ancestry, to deprive Plaintiffs of the equal protection of the laws and of equal privileges and immunities. Their marriage does not preclude their treatment as separate persons capable of conspiring. See United States v. Dege, 364 U.S. 51 (1960). Their agreement may be,

and is, shown by their conduct, including the acts alleged above; no express agreement need be shown. See Scott v. Ross, 140 F.3d 1275 (9th Cir. 1998). The object of the conspiracy included depriving Plaintiffs of their rights under 42 U.S.C. § 1981 — including the attorney-client and business contract rights alleged above — which are protected against private as well as official encroachment. See 42 U.S.C. § 1981(c) (rights protected 'against impairment by nongovernmental discrimination').

**47.** In furtherance of the conspiracy, Defendants committed overt acts — including the knowingly false reports to law enforcement and federal agencies, the immigration-targeted communications, and the demands and intimidation directed at Plaintiffs described above — that injured Plaintiffs in their persons and property. Each Defendant is liable for the acts of the other taken in furtherance of the conspiracy. Defendants never merely requested that governmental authorities investigate possible violations of law. Defendants specifically invoked Plaintiffs' ancestry, ethnicity, immigrant status, and citizenship as the reason governmental intervention was warranted.

**48.** Plaintiffs are entitled to compensatory and punitive damages, injunctive relief, and attorney's fees under 42 U.S.C. § 1988.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as follows:

1. For compensatory and general damages according to proof;
2. For a declaration that Defendants' conduct violated Plaintiffs' rights under 42 U.S.C. §§1981 and 1985.
3. For exemplary and punitive damages according to proof;
4. For a temporary, preliminary, and permanent injunction, narrowly tailored consistent with the First Amendment, restraining Defendants, and each of them, from (a) communicating to Plaintiffs or their counsel any demand for money, settlement, or other consideration coupled with a threat to report or accuse Plaintiffs of crimes or to report Plaintiffs' immigration status, and (b) knowingly making materially false statements of

fact to any law-enforcement, immigration, or attorney-licensing agency concerning Plaintiffs’ purported criminal conduct, consent records, or immigration history;

5. For attorney’s fees and costs under 42 U.S.C. § 1988;
6. For pre- and post-judgment interest; and
7. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

JUSTICE LAW GROUP



Date: July 20, 2026

Mario Iskander, Esq.
Attorneys for Plaintiffs