Mark L. Javitch (CA SBN 323729)
Javitch Law Office
3 East 3rd Ave. Ste 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Facsimile: (650) 300-0343
mark@javitchlawoffice.com

*Attorney for Defendant*
Brian F. McBride

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MOHAMMAD GHAFARINIA a/k/a MATT NIA; ARSALAN GHANBARI; NIMA ASADI; and BETTER COMPANIES LLC,<br><br>Plaintiffs,<br><br>v.<br><br>BRIAN F. McBRIDE and DEBORAH BLISSICK,<br><br>Defendants. | Case No.: 8:26-cv-01922-MRA-PVC<br><br>**NOTICE OF MOTION AND MOTION OF DEFENDANT BRIAN F. McBRIDE TO DISMISS THE FIRST AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(2), 12(b)(1), AND 12(b)(6); MEMORANDUM OF POINTS AND AUTHORITIES;** |

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on November 3, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, before the Honorable Mónica Ramírez Almadani, in Courtroom 9B on the 9th Floor of the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California, Defendant Brian F. McBride, appearing specially, will and hereby does move this Court for an order

dismissing the First Amended Complaint in its entirety, with prejudice, pursuant to Federal Rules of Civil Procedure 12(b)(2), 12(b)(1), and 12(b)(6), and in the alternative for an order dismissing or staying this action as duplicative of *James, et al. v. Ghanbari, et al.*, No. 8:26-cv-01489-FWS-BFM (C.D. Cal.). Mr. McBride raises each of these grounds in this, his first Rule 12 motion, as Rule 12(h)(1) requires, and does not waive any of them.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on July 29, 2026.

This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the pleadings and records on file, and such further argument as may be presented at the hearing.

# TABLE OF CONTENTS

I. INTRODUCTION ..... 1
II. STATEMENT OF FACTS ..... 2
III. LEGAL STANDARD ..... 4
IV. THE COURT LACKS PERSONAL JURISDICTION OVER MR. McBRIDE ..... 5
A. Plaintiffs bear the burden, and the alleged contacts must satisfy the purposeful-direction test. ..... 5
B. The pleading alleges no harm caused in California — only harm felt by California residents. ..... 6
C. *Calder* does not supply the forum contact, because Mr. McBride aimed nothing at California. ..... 7
V. PLAINTIFFS LACK ARTICLE III STANDING ..... 7
A. A request that an agency act causes nothing unless the agency acts — and Plaintiffs plead that none did. ..... 7
B. The injuries Plaintiffs describe are self-inflicted, fear-based, or without any causal mechanism. ..... 9
C. No order against Defendants can redress injuries that depend on governmental agencies' independent choices within their discretion. ..... 10
VI. THE FIRST AMENDMENT BARS THIS RELABELED DEFAMATION CLAIM ..... 11
VII. THE § 1981 CLAIM FAILS BECAUSE NO DEFENDANT HAD POWER OVER ANY CONTRACT ..... 13
VIII. THE § 1985(3) CLAIM FAILS ..... 14
A. No state actor is alleged. ..... 14
B. No agency acted, and no right was deprived. ..... 16
IX. THIS ACTION WAS A COMPULSORY COUNTERCLAIM IN THE FIRST-FILED JAMES ACTION AND IS DUPLICATIVE OF IT ..... 17
X. CONCLUSION ..... 18

# TABLE OF AUTHORITIES

## UNITED STATES SUPREME COURT CASES

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... 5, 14
*Calder v. Jones*, 465 U.S. 783 (1984) .......... 7
*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) .......... 11
*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......... 4, 8, 9, 10
*Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470 (2006) .......... 14
*Great Am. Fed. Sav. & Loan Ass'n v. Novotny*, 442 U.S. 366 (1979) .......... 14, 16
*Griffin v. Breckenridge*, 403 U.S. 88 (1971) .......... 15
*Hustler Magazine, Inc. v. Falwell*, 485 U.S. 46 (1988) .......... 12
*Laird v. Tatum*, 408 U.S. 1 (1972) .......... 9
*New York Times Co. v. Sullivan*, 376 U.S. 254 (1964) .......... 12
*Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767 (1986) .......... 12
*Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26 (1976) .......... 8
*United Bhd. of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825 (1983) .......... 15, 16
*Walden v. Fiore*, 571 U.S. 277 (2014) .......... 6, 7
*Whitmore v. Arkansas*, 495 U.S. 149 (1990) .......... 4, 9, 10

## NINTH CIRCUIT CASES

*Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684 (9th Cir. 2007) .......... 18
*Bains LLC v. Arco Prods. Co.*, 405 F.3d 764 (9th Cir. 2005) .......... 13
*Hart v. Parks*, 450 F.3d 1059 (9th Cir. 2006) .......... 16
*Mattel, Inc. v. MGA Entm't, Inc.*, 705 F.3d 1108 (9th Cir. 2013) .......... 17
*Pasadena Republican Club v. W. Justice Ctr.*, 985 F.3d 1161 (9th Cir. 2021) .......... 15
*In re Pegasus Gold Corp.*, 394 F.3d 1189 (9th Cir. 2005) .......... 17
*Picot v. Weston*, 780 F.3d 1206 (9th Cir. 2015) .......... 6
*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797 (9th Cir. 2004) .......... 4, 5
*Sever v. Alaska Pulp Corp.*, 978 F.2d 1529 (9th Cir. 1992) .......... 16
*Woodrum v. Woodward County*, 866 F.2d 1121 (9th Cir. 1989) .......... 16

**OTHER FEDERAL CASES**

*Helmann v. CodePink Women for Peace*, 2025 U.S. Dist. LEXIS 219090, 2025 WL 3030582 (C.D. Cal. 2025) .......... 15

**STATUTES AND RULES**

42 U.S.C. § 1981 .......... passim

42 U.S.C. § 1985(3) .......... passim

Fed. R. Civ. P. 12(b)(1) .......... passim

Fed. R. Civ. P. 12(b)(2) .......... passim

Fed. R. Civ. P. 12(b)(6) .......... passim

Fed. R. Civ. P. 12(h)(1) .......... passim

Fed. R. Civ. P. 13(a) .......... 17

U.S. Const. amend. I .......... 2, 11, 12, 15

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action asks the Court to exercise jurisdiction and impose civil liability on a New Jersey consumer for reporting unwanted telephone calls to government agencies.

Mr. McBride and his wife each received more than two hundred telemarketing calls on their residential lines. He asked the police department in the city from which the calls originated to make them stop. He asked federal agencies to investigate conduct he believed unlawful. He wrote to his congressman. He filed suit under the Telephone Consumer Protection Act, and that suit is pending in this District. Plaintiffs, the owners of the enterprise that placed the calls, responded by suing him and his wife for racial discrimination and conspiracy.

Four features of the pleading, each apparent on its face and none requiring factual development, defeat the claims across every doctrine. First, the conduct Plaintiffs challenge is entirely speech to government bodies — reports to the police, to federal agencies, and to Congress, and the filing of a lawsuit — undertaken by Mr. McBride from New Jersey, about telephone calls received in New Jersey; a resident who directed no consequence into California is not subject to personal jurisdiction here (Part IV). Second, the pleading alleges that no agency ever acted on any report, so no injury Plaintiffs describe is traceable to Defendants or redressable by an order against them (Part V). Third, every act is a petition about calls that indisputably occurred, and the only

injury pleaded is the reputational harm of standing accused — a harm that sounds in defamation, which Plaintiffs do not and cannot plead, and which the First Amendment does not permit them to recover by relabeling protected petitioning as a civil-rights claim (Part VI). Fourth, nothing was taken from anyone and no state actor is alleged, so the statutory claims fail on their own terms; if generating responsive legal work were an actionable impairment of contract, every accusation against a represented party would state a federal claim (Parts VII and VIII). The action was, in any event, a compulsory counterclaim in the first-filed case pending before another judge of this Court (Part IX). The First Amended Complaint should be dismissed.

## II. STATEMENT OF FACTS

Defendants Brian F. McBride and Deborah Blissick are private individuals who reside in New Jersey. FAC ¶¶ 12-13. Plaintiffs Mohammad Ghafarinia (also known as Matt Nia) and Arsalan Ghanbari own the Better group of companies, including Plaintiff Better Companies LLC; Plaintiff Nima Asadi, a California attorney, serves as its general counsel. FAC ¶¶ 8-11. The individual Plaintiffs allege that they are of Persian or Iranian ancestry, that Better Companies has an imputed Persian or Iranian identity, and that Defendants acted against them on that basis. FAC ¶¶ 1, 8-11, 14. Mr. McBride received more than two hundred telephone calls, and his wife more than two hundred more, from Plaintiffs' businesses. See FAC ¶ 21 & Ex. A.

Mr. McBride reported the calls, and conduct he believed unlawful, to a series of governmental bodies: the Chief of Police of Irvine, California; the Department of Homeland Security and Immigration and Customs Enforcement; United States Citizenship and Immigration Services; the Federal Bureau of Investigation's Internet Crime Complaint Center; and the State Bar of California. He also wrote to his congressman. FAC ¶¶ 19-24; Exs. A-D. Mr. McBride separately filed suit under the Telephone Consumer Protection Act; that action — *James, et al. v. Ghanbari, et al.*, No. 8:26-cv-01489-FWS-BFM — was filed first and is pending before another judge of this District. The last of the challenged communications occurred on June 25, 2026. FAC ¶¶ 21-22, 34.

The pleading alleges a single governmental response. An officer of the Irvine Police Department contacted Mr. McBride in New Jersey, answered his emails, and referred him to the department's records custodian. FAC ¶ 33. As to the remaining agencies, Plaintiffs allege only, on information and belief, that the reports "remain pending before, or under review by, the receiving agencies," whose files they concede are within "the exclusive possession of those agencies." *Id.* No investigation, charge, proceeding, disciplinary inquiry, or immigration action is alleged. *Id.*

Plaintiffs allege that responding to the reports "forc[ed] Plaintiffs and their counsel to divert substantial time and resources." FAC ¶¶ 27, 39. They allege "the fear of criminal, immigration, and disciplinary process" and "the reputational harm of standing

accused," which they say they suffer "regardless of what any agency ultimately does." FAC ¶ 34. They further allege "impairment of lender relationships" and "economic loss," FAC ¶ 35, and impairment of their contractual relationships, FAC ¶ 39. Plaintiffs assert two claims: intentional race or ancestry discrimination under 42 U.S.C. § 1981 (First Claim for Relief, FAC ¶¶ 36-41), and conspiracy to deprive of equal rights under 42 U.S.C. § 1985(3) (Second Claim for Relief, FAC ¶¶ 42-47).

## III. LEGAL STANDARD

On a motion under Rule 12(b)(2), the plaintiff bears the burden of establishing that the exercise of personal jurisdiction is proper; where the motion is resolved on the written materials rather than at an evidentiary hearing, the plaintiff need make only a prima facie showing of jurisdictional facts, and uncontroverted allegations in the complaint are taken as true. *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

On a motion under Rule 12(b)(1), the plaintiff bears the burden of establishing the elements of Article III standing: an injury that is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) (internal citation omitted). A plaintiff "must clearly and specifically set forth facts sufficient to satisfy these Art. III standing requirements," and "[a] federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155-56 (1990).

On a motion under Rule 12(b)(6), the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face; the court accepts well-pleaded factual allegations as true but is not bound to accept legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## IV. THE COURT LACKS PERSONAL JURISDICTION OVER MR. McBRIDE

A district court may dismiss for lack of personal jurisdiction before addressing other threshold questions. This question is straightforward because it requires no factual development. Accepting every jurisdictional allegation as to Mr. McBride, the contacts alleged do not reach the constitutional minimum, because the pleading itself establishes that nothing Mr. McBride did produced any consequence in California.

### A. Plaintiffs bear the burden, and the alleged contacts must satisfy the purposeful-direction test.

California's long-arm statute is coextensive with due process. *Schwarzenegger*, 374 F.3d at 800-01. Because these claims sound in tort, the purposeful-direction branch applies, and Plaintiffs must show "(1) an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* at 803 (quotation marks omitted). Each element is required. *Id.* at 802. Mr. McBride does not dispute the first element. The argument concerns the third, and it fails on the face of the pleading.

**B. The pleading alleges no harm caused in California — only harm felt by California residents.**

A plaintiff's residence is not a contact. "[M]ere injury to a forum resident is not a sufficient connection to the forum," and an injury "is jurisdictionally relevant only insofar as it shows that the defendant has formed a contact with the forum State." *Walden v. Fiore*, 571 U.S. 277, 290 (2014). The inquiry "looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there," and "the plaintiff cannot be the only link between the defendant and the forum." *Id.* at 285.

Here the pleading affirmatively establishes the absence of any California-located consequence. The only governmental response it alleges is that an Irvine, California police officer contacted Mr. McBride in New Jersey; as to every other agency, the reports are alleged, on information and belief, only to "remain pending." FAC ¶ 33. Each response ran to a New Jersey resident, and no investigation, charge, proceeding, or disciplinary or immigration action is alleged.

What remains is the injury Plaintiffs themselves describe — the fear of process and the reputational harm of standing accused, which they say they suffer "regardless of what any agency ultimately does." FAC ¶ 34. Those injuries are "entirely personal to [Plaintiffs] and would follow [them] wherever [they] might choose to live or travel." *Picot v. Weston*, 780 F.3d 1206, 1215 (9th Cir. 2015). An injury that travels with the plaintiff is not a contact with the forum.

### C. *Calder* does not supply the forum contact, because Mr. McBride aimed nothing at California.

Plaintiffs rely on *Calder v. Jones*, 465 U.S. 783 (1984). But jurisdiction in *Calder* rested on the defendants' own forum-directed conduct: a story concerning a California resident's California activities, circulated to the publication's California readership, so that "California [wa]s the focal point both of the story and of the harm suffered." *Id.* at 789. The *Calder* defendants directed their conduct into the forum. Mr. McBride directed his at no one in California. Every communication the First Amended Complaint describes was addressed to a governmental body — a police chief, a congressional office, and federal agency intake systems — none directed to a California audience, and several outside the State. The only link to California is that Plaintiffs reside here, which Walden forecloses as a basis for jurisdiction. See supra Part IV.B.

## V. PLAINTIFFS LACK ARTICLE III STANDING

Plaintiffs fail both the traceability and redressability requirements, for a reason that appears on the face of their pleading: the only conduct they attribute to Defendants is asking government agencies to act, and no agency acted. On the face of the complaint, months of reports to governmental agencies produced a single returned phone call to Mr. McBride and no adverse action against anyone. FAC ¶ 33.

### A. A request that an agency act causes nothing unless the agency acts — and Plaintiffs plead that none did.

Every act on which liability is premised is a request addressed to a governmental body: reports to the Chief of Police of Irvine, California, requests that the Department of

Homeland Security and Immigration and Customs Enforcement investigate, a tip to United States Citizenship and Immigration Services, a complaint to the Federal Bureau of Investigation's Internet Crime Complaint Center, and a grievance to the State Bar of California. FAC ¶¶ 19-24; Exs. A-D.

A request is not a consequence. Defendants could not investigate, charge, prosecute, discipline, or deport anyone. Each of those acts lies within the exclusive discretion of an agency that is not a party here. An injury that materializes only if a non-party independently chooses to act is not fairly traceable to the defendant. *Clapper*, 568 U.S. at 414; *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. 26, 41-42 (1976) (a federal court may redress only injury traceable to the defendant and not solely to some third party).

No agency acted. As to the Irvine Police Department, the Department's response was to have an officer contact Mr. McBride, to answer Mr. McBride's emails, and to direct Mr. McBride to its records custodian. FAC ¶ 33. Every one of those acts was directed to Mr. McBride, not to any Plaintiff. As to the five remaining agencies, Plaintiffs plead only — expressly on information and belief — that reports "remain pending before, or under review by, the receiving agencies," whose files they concede are within "the exclusive possession of those agencies." *Id.* No investigation, charge, proceeding, disciplinary inquiry, or immigration action is alleged. Plaintiff Asadi remains in practice and appears as a Plaintiff here.

An allegation pleaded on information and belief about the internal status of non-parties' files does not "clearly and specifically set forth facts" establishing causation. *Whitmore*, 495 U.S. at 155-56.

**B. The injuries Plaintiffs describe are self-inflicted, fear-based, or without any causal mechanism.**

Plaintiffs' pleaded harms divide into categories, none traceable to Defendants.

The only concrete loss identified is that the reports "forc[ed] Plaintiffs and their counsel to divert substantial time and resources" to responding. FAC ¶ 39; see *id.* ¶ 27. That is a cost Plaintiffs chose to incur. Plaintiffs "cannot manufacture standing by choosing to make expenditures based on hypothetical future harm that is not certainly impending," and such "self-inflicted injuries are not fairly traceable" to a defendant. *Clapper*, 568 U.S. at 402, 416.

The balance is apprehension. Plaintiffs plead "the fear of criminal, immigration, and disciplinary process" and "the reputational harm of standing accused," which they say they suffer "regardless of what any agency ultimately does." FAC ¶ 34. Where a plaintiff's outlays are "simply the product of [its] fear" of a governmental consequence that has not occurred, they are "insufficient to create standing." *Clapper*, 568 U.S. at 417-18 (citing *Laird v. Tatum*, 408 U.S. 1, 10-15 (1972)). And "[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm[.]" *Laird*, 408 U.S. at 13-14.

The reputational and economic injuries have no mechanism at all. The accusations were made to government agencies, not to the public: the pleading alleges no publication, no press contact, and no communication to any customer, lender, vendor, or counterparty. Absent publication, a confidential report to an agency cannot injure a reputation in the marketplace. And while Plaintiffs allege "impairment of lender relationships" and "economic loss," FAC ¶ 35, they identify no lender, no financing declined, no agreement lost, and no sum.

**C. No order against Defendants can redress injuries that depend on governmental agencies' independent choices within their discretion.**

Standing also requires that the injury be "redressable by a favorable ruling." *Clapper*, 568 U.S. at 409; see *Whitmore*, 495 U.S. at 155 (injury must be "likely to be redressed by a favorable decision"). An order directed at Defendants would not dissolve Plaintiffs' fear of process, because whether any process ever issues rests with the discretion of governmental agencies not before the Court. Enjoining Mr. McBride does not withdraw a report already submitted, does not close a file, and does not bind any agency to refrain from acting on information already in its possession.

This defect is fatal to the prospective relief requested in Prayer paragraph 4 for the additional reason that no future injury is impending. Standing for prospective relief turns on the threat of future injury: "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any

continuing, present adverse effects." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal citation omitted).

Every act Plaintiffs allege is complete and past, the latest occurring June 25, 2026. FAC ¶¶ 21-22, 34. Months of reports to governmental bodies produced no action against any Plaintiff, and Plaintiffs plead that their injuries exist "regardless of what any agency ultimately does," *id.* ¶ 34 — which concedes there is no future governmental consequence for an injunction to prevent. See *Lyons*, 461 U.S. at 111 n. 8 ("The emotional consequences of a prior act simply are not a sufficient basis for an injunction absent a real and immediate threat of future injury by the defendant.").

## VI. THE FIRST AMENDMENT BARS THIS RELABELED DEFAMATION CLAIM

Every act on which the First Amended Complaint premises liability — the reports and complaints catalogued in Part V.A, together with the pending suit under the Telephone Consumer Protection Act — is speech addressed to a governmental body and its power to act. See FAC ¶¶ 19-24; Exs. A-D. Neither § 1981 nor § 1985(3) may be construed to impose liability on that speech consistent with the First Amendment, for the reason that follows.

Stripped of its labels, the injury Plaintiffs assert is reputational — the harm of "standing accused." FAC ¶ 34. Reputational injury from speech is the province of defamation, and a claim seeking to redress it "can claim no talismanic immunity from

constitutional limitations"; it "must be measured by standards that satisfy the First Amendment." *New York Times Co. v. Sullivan*, 376 U.S. 254, 269 (1964).

A plaintiff cannot escape those standards by attaching a different label to the claim: in *Hustler Magazine, Inc. v. Falwell*, the Court held that even public figures "may not recover for the tort of intentional infliction of emotional distress . . . without showing in addition that the publication contains a false statement of fact which was made with 'actual malice.'" 485 U.S. 46, 56 (1988).

The same principle forecloses using §§ 1981 and 1985(3) to impose liability for speech that could not support a defamation claim. And this speech could not. A defamation claim requires a false statement of fact, and for speech on a matter of public concern — which a report to law enforcement of unlawful telemarketing plainly is — even a private-figure plaintiff "cannot recover damages without also showing that the statements at issue are false." *Philadelphia Newspapers, Inc. v. Hepps*, 475 U.S. 767, 768-69 (1986). Plaintiffs cannot make that showing: the premise of their own suit does not dispute that the telephone calls occurred. And the statements were in any event reports to government bodies, published to no one prior to this lawsuit. Any public exposure of those communications was Plaintiffs' own doing: they attached them as exhibits to the First Amended Complaint.

## VII. THE § 1981 CLAIM FAILS BECAUSE NO DEFENDANT HAD POWER OVER ANY CONTRACT

Section 1981 reaches performance-phase conduct, but the defendant's conduct must operate on the contractual relationship. In *Bains LLC v. Arco Products Co.*, the defendant was the counterparty to the plaintiff's contract and degraded its own performance of it, making "Flying B's drivers wait longer to fill their trucks and to use slower pumps than other drivers," so that the plaintiff was "harmed economically in the performance of its contract" and received "less money under [the] contract." 405 F.3d 764, 769, 773 (9th Cir. 2005).

Nothing of that kind is pleaded. Mr. McBride was a stranger to every relationship Paragraph 39 identifies. He was not a party or counterparty to any engagement, had no role in performance, and had no power to alter, suspend, or terminate anything. The First Amended Complaint does not allege that any engagement was terminated, that any counsel ceased or curtailed a representation, or that any Plaintiff paid more or received less than an engagement provided. Counsel appear for Plaintiffs here and in the related actions.

The sole impairment identified is that the reports "forc[ed] Plaintiffs and their counsel to divert substantial time and resources from performance of the engagements to responding to Defendants' knowingly false reports." FAC ¶ 39. That is the cost of responding to accusations, and — as Part V.B explains — a self-inflicted one. Unlike the plaintiff in *Bains*, Plaintiffs do not allege they received less under their engagements;

they allege their lawyers did more work. If generating responsive legal work were an actionable impairment of contract, every accusation against a represented party would state a federal claim.

The State Bar grievance supplies nothing further. No discipline, suspension, or restriction on Plaintiff Asadi's practice is alleged. An unadjudicated grievance that produced no consequence did not impair his ability to perform his engagement.

Finally, Paragraph 39(c) names no counterparty, no agreement, and no term lost or declined. A category of unnamed potential relationships is not "an impaired contractual relationship . . . under which the plaintiff has rights." *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) (internal citation omitted); see *Iqbal*, 556 U.S. at 678.

## VIII. THE § 1985(3) CLAIM FAILS

The § 1985(3) conspiracy claim fails for two independent reasons: no state actor is alleged, and no deprivation of any federal right is pleaded.

### A. No state actor is alleged.

Section 1985(3) creates no rights; it is "a purely remedial statute, providing a civil cause of action when some otherwise defined federal right — to equal protection of the laws or equal privileges and immunities under the laws — is breached by a conspiracy in the manner defined by the section." *Great American Federal Savings & Loan Association v. Novotny*, 442 U.S. 366, 376 (1979). Paragraphs 43-44 invoke "the equal protection of the laws."

But the Equal Protection Clause restrains government, and a claim premised on a right that runs only against the State requires state involvement: such a conspiracy "is not a violation of § 1985(3) unless it is proved that the State is involved in the conspiracy or that the aim of the conspiracy is to influence the activity of the State." *United Brotherhood of Carpenters & Joiners, Local 610 v. Scott*, 463 U.S. 825, 830 (1983). The Ninth Circuit states the rule plainly: "Like § 1983, which requires the wrongdoer to be a state actor, § 1985(3) requires at least one of the wrongdoers in the alleged conspiracy to be a state actor." *Pasadena Republican Club v. Western Justice Center*, 985 F.3d 1161, 1171 (9th Cir. 2021).

Plaintiffs cannot avoid that requirement by invoking *Griffin v. Breckenridge*, 403 U.S. 88 (1971). See FAC ¶ 43. *Scott* examined *Griffin* and confirmed that although § 1985(3) does not itself require state action, the equal-protection and First Amendment rights a plaintiff invokes it to vindicate do, so those rights cannot be reached by a purely private conspiracy that neither involves nor affects the State. *Scott*, 463 U.S. at 831-33. Applying *Scott*, another judge of this Court recently dismissed a § 1985(3) claim brought on the same theory Plaintiffs advance here, rejecting the argument that *Griffin* eliminates the state-action requirement for a conspiracy aimed at First or Fourteenth Amendment rights. *Helmann v. CodePink Women for Peace*, No. 2:24-cv-05704-SVW-PVC, 2025 U.S. Dist. LEXIS 219090, at *24-25, 2025 WL 3030582 (C.D. Cal. June 13, 2025)

("Section 1985(3) claims based on a conspiracy to violate a person's First or Fourteenth Amendment rights require state action.").

Defendants are two private individuals. No governmental officer is alleged to have joined any conspiracy. To the extent the § 1985(3) claim rests on the equal protection of the laws, it fails. And to the extent it instead rests on the rights secured by § 1981, it fails with that claim, because § 1985(3) supplies no remedy for a substantive right that was not violated. *Novotny*, 442 U.S. at 376.

**B. No agency acted, and no right was deprived.**

A § 1985(3) plaintiff must plead "an act in furtherance of this conspiracy" and that "a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992) (citing *Scott*, 463 U.S. at 828-29). A conspiracy claim fails where the plaintiff cannot show "that any actual deprivation of his constitutional rights resulted from the alleged conspiracy." *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989); accord *Hart v. Parks*, 450 F.3d 1059, 1071 (9th Cir. 2006).

As Part V.A explains, no agency acted: the Irvine, California Police Department's only response was to contact Mr. McBride, answer his emails, and refer him to a records custodian, FAC ¶ 33, and as to the five other agencies Plaintiffs plead only — on information and belief — that reports "remain pending" in files within "the exclusive possession of those agencies." *Id.* No investigation, charge, proceeding, disciplinary

inquiry, or immigration action is alleged. After months of reports to governmental agencies, nothing was taken from anyone.

Plaintiffs answer that their injuries flow from "the making and pendency of the . . . reports themselves" and exist "regardless of what any agency ultimately does." FAC ¶ 34. But the fear of process and the discomfort of being accused are not a deprivation of any right or privilege; they are the ordinary consequence of being the subject of a citizen's report to government. On Plaintiffs' own pleading, no right of theirs was denied by anyone.

## IX. THIS ACTION WAS A COMPULSORY COUNTERCLAIM IN THE FIRST-FILED JAMES ACTION AND IS DUPLICATIVE OF IT

Plaintiffs' claims were required to be pleaded as counterclaims in the first-filed action pending before Judge Slaughter, and their decision to file a separate, later action instead makes this case duplicative.

A pleading "must state as a counterclaim any claim that — at the time of its service — the pleader has against an opposing party if the claim . . . arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Fed. R. Civ. P. 13(a)(1)(A). The Ninth Circuit applies a logical-relationship test: a counterclaim is compulsory where it and the opposing claim "arise from the same aggregate set of operative facts." *Mattel, Inc. v. MGA Entertainment, Inc.*, 705 F.3d 1108, 1110 (9th Cir. 2013); see *In re Pegasus Gold Corp.*, 394 F.3d 1189, 1195-96 (9th Cir. 2005).

The requirement is satisfied here. In *James, et al. v. Ghanbari, et al.*, No. 8:26-cv-01489-FWS-BFM, first-filed and pending in this District, Mr. McBride is a plaintiff and Plaintiffs Ghanbari, Ghafarinia, and Better Companies LLC are defendants. At the time they responded in *James*, those defendants held the claims they now assert here — claims premised entirely on Mr. McBride's reports concerning, and his prosecution of, the same telephone calls and the same consent records at issue in *James*. The claims therefore arise from the identical aggregate of operative facts and were compulsory counterclaims in that action. They were not pleaded there.

**X. CONCLUSION**

For the foregoing reasons, Defendants request that the Court dismiss the First Amended Complaint with prejudice.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendant Brian F. McBride, certifies that this memorandum contains 6,803 words, which complies with the word limit of L.R. 11-6.1, relying on the word-count function of the word-processing program used to prepare it.

**CERTIFICATE OF SERVICE**

I hereby certify that on September 21, 2026, I electronically filed the foregoing Notice of Motion and Motion of Defendant Brian F. McBride to Dismiss the First Amended Complaint, together with the [Proposed] Order, with the Clerk of the Court for

the United States District Court for the Central District of California using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: September 21, 2026 Respectfully submitted,

By: /s/ Mark L. Javitch
Mark L. Javitch (CA SBN 323729)
JAVITCH LAW OFFICE
3 East 3rd Ave. Ste. 200
San Mateo, CA 94401
Telephone: (650) 781-8000
Fax: (650) 300-0343
mark@javitchlawoffice.com

*Attorney for Defendant*
*Brian F. McBride*